2019-09457

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ALBERT P. HARTMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| ILLINOIS CENTRAL RAILROAD COMPANY ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendant. ) | |

## COMPLAINT

NOW COMES the Plaintiff, ALBERT P. HARTMAN, by and through his attorneys, Marc J. Bern & Partners LLP, and Poolson Oden, L.L.C., complains and alleges against Defendants ILLINOIS CENTRAL RAILROAD COMPANY as follows:

### INTRODUCTION

1. This suit arises out of the negligence of Defendant ILLINOIS CENTRAL RAILROAD COMPANY (hereinafter "Defendant") that directly caused and resulted in Plaintiff's colon cancer and lung cancer.

2. Plaintiff was diagnosed with rectal adenocarcinoma with metastases to the lung (hereinafter collectively "cancer") on or about September 24, 2018.

3. The Federal Employers' Liability Act, 45 U.S.C. Sec. 51 et seq., (hereinafter "FELA") provides for this cause of action and grants this Court concurrent jurisdiction over it.

### PARTIES AND VENUE

4. Plaintiff is an adult individual residing in the city of Metairie, in the state of Louisiana.

5. Defendant is a corporation organized under the laws of the State of Delaware with

its principal place of business in the city of Homewood, County of Cook, State of Illinois.

6. Plaintiff worked for Defendant from approximately 1960 until 1996 throughout the State of Louisiana.

## GENERAL ALLEGATIONS

7. Plaintiff worked for Defendant as a switchman from approximately 1960 to 1996.

8. As part of his employment with Defendant, Plaintiff worked throughout Louisiana, in the New Orleans terminal and at the Baton Rouge District.

9. During the course and in the scope of his employment with Defendant, Plaintiff was engaged in the furtherance of interstate commerce within the meaning of FELA.

10. Defendant was, at all times relevant to this complaint, engaged in interstate commerce in and throughout several states of the United States as common carriers by rail and for the purposes hereof did operate locomotives, railroad cars and repair facilities and transacted substantial business throughout the various states of the United States.

11. Defendant, at all times relevant to this complaint, conducted substantial business within the state of Louisiana. Defendant owned, managed, maintained, used and conducted substantial operations at multiple major facilities and offices, all located within the state of Louisiana, including the operation of regularly scheduled trains arriving into and departing from its multiple facilities in New Orleans, Louisiana. Defendant derived substantial revenue from operations within the state of Louisiana and continues these operations to this day.

12. During the course and scope of Plaintiff's employment during his career with Defendant and while working in its yards, along its right of ways, rails, buildings, locomotives, freight cars, and passenger cars, Plaintiff was, on a daily basis throughout his career, regularly and routinely exposed to various toxic substances and carcinogens known to cause cancer including

large quantities of coal dust, coal soot, coal smoke, diesel fuel, diesel exhaust, diesel fumes, diesel smoke, diesel exhaust soot, benzene, polycyclic aromatic hydrocarbons ("PAHs"), creosote, pesticides, herbicides, silica sand, and asbestos in addition to others that may be discovered during litigation.

13. Specifically, while working for Defendant, Plaintiff's daily work required him to work inside, behind, and alongside idling locomotives, sometimes indoors, for long periods of time exposing him to at least the following carcinogens on a routine, daily basis: diesel fuel, diesel exhaust, diesel fumes, diesel smoke, diesel exhaust soot, benzene, and PAHs.

14. Plaintiff's work required him to use a coal stove for at least a decade on cabooses and in switchman shanties, which exposed him to the following carcinogens on a routine, daily basis: coal dust, coal soot, coal smoke, benzene, and PAHs.

15. Plaintiff's work required him to deliver fresh railroad ties on "work trains;" pass workers repairing railroad ties; pickup railroad ties at a railroad tie manufacturing plant; and/or stand in close proximity to railroad ties while working alongside trains, exposing him to toxic levels of creosote and benzene on a daily basis.

16. Plaintiff's work for Defendant often forced him to work near "spray trains" spraying large quantities of herbicides and pesticides along the rail, exposing him to these toxic substances.

17. Plaintiff's work exposed him to unreasonably dangerous amounts of silica sand by inhalation and/or skin absorption because he would work in close proximity to the silica sand in the sand towers in various yards used by Defendant.

18. Plaintiff's work required him to work with and/or in close proximity to locomotive brake shoes which were made at least partly with asbestos, exposing him by inhalation and/or skin

absorption to asbestos fibers on a daily basis.

19. Plaintiff's work also required him to work in close proximity to asbestos insulation and coverings in roundhouses and other structures, exposing him by insulation to asbestos fibers on a daily basis.

20. Plaintiff's exposure to the above referenced toxic substances, which are known cancer causing agents, steadily over a course of many years caused, in whole or in part, his development of cancer.

21. Before and during Plaintiff's employment with Defendant, Defendant knew that Plaintiff's exposure to the toxic substances could foreseeably lead to cancer.

22. Before and during Plaintiff's employment with Defendant, Defendant should have known that Plaintiff's exposure to the toxic substances could foreseeably lead to cancer because studies, proceedings and literature took place and/or existed regarding the same during and/or before Plaintiff's employment, such as, for instance, and without limitation, proceedings of the Association of American Railways in the 1950s and 1960s; and studies done by epidemiologists in North America and Europe focusing on workers in occupational environments similar to Plaintiff's including as long as ago as 1895 and up through Decedent's employment.

## COUNT I: NEGLIGENCE AGAINST DEFENDANT

23. Plaintiff incorporates paragraphs 1–22 as if fully set forth herein.

24. It was the duty of Defendant, as Plaintiff's employer, at all times relevant to this Complaint, to use ordinary care to provide Plaintiff with a reasonably safe place in which to do his work.

25. As part of that duty to provide a reasonably safe place in which to do work, Defendant, as Plaintiff's employer, at all times relevant to this Complaint, was required to measure

the concentrations of the toxic substances released into Plaintiff's work area.

26. As part of that duty to provide a reasonably safe place in which to do work, Defendant, as Plaintiff's employer, at all times relevant to this Complaint, was required to provide adequate warnings of the dangers of the toxic substances.

27. As part of that duty to provide a reasonably safe place in which to do work, Defendant, as Plaintiff's employer, at all times relevant to this Complaint, was required to keep abreast of scientific and medical research evidence concerning the hazards of the toxic substances.

28. As part of that duty to provide a reasonably safe place in which to do work, Defendant, as Plaintiff's employer, at all times relevant to this Complaint, was required to provide hazard control.

29. "Hazard control" as used in paragraph 28 includes the use of engineering controls.

30. "Hazard control" as used in paragraph 28 includes the use of administrative controls.

31. "Hazard control" as used in paragraph 28 includes the use of personal protective equipment, including requiring the use of respirators.

32. During Plaintiff's employment, Defendant breached said duty in at least one or more of the following ways:

    a. Failure to use ordinary care and caution to provide the Plaintiff with a reasonably safe place in which to work as required by the FELA;

    b. Failure to take reasonably effective action to reduce, modify or eliminate certain job duties, equipment or practices so as to minimize or eliminate the Plaintiff's exposure to the toxic

substances;

c. Failure to reasonably test railroad facilities, equipment, yards, buildings, and right of ways for the presence of the toxic substances;

d. Failure to reasonably engage in follow-up monitoring of its facilities, equipment, yards, building, and right of ways for the presence of the toxic substances;

e. Failure to properly reduce to safe levels or remove known toxic materials and carcinogens from its facilities, equipment, yards, building, and right of ways;

f. Failure to periodically reasonably test employees such as the Plaintiff for physical effects of exposure to the toxic substances and failing to take appropriate action, including advising the Plaintiff as to the test results;

g. Failure to warn Plaintiff of the risk of contracting cancer or other diseases as a result of exposure to the toxic substances;

h. Failure to make reasonable efforts to inspect or monitor the levels/amounts of exposure, of Plaintiff, to the toxic substances;

i. Failed to keep abreast of scientific and medical research evidence concerning the hazards of the toxic substances; and

j. Failed to consult scientific and medical research evidence concerning the hazards of the toxic substances.

33. The aforesaid occurrences were caused in whole or in part by the negligence of Defendant and/or the negligence of Defendant's agents, servants and/or employees.

34. It was the duty of Defendant, as Plaintiff's employer, at all times relative to this complaint, to use ordinary care to provide Plaintiff with reasonably safe and suitable tools, machinery, and appliances with which to do his work.

35. Using ordinary or reasonable care to furnish those tools which are reasonably safe and suitable, as described in paragraph 34 included at least requiring Plaintiff to wear a respirator mask.

36. Using ordinary or reasonable care to furnish those tools which are reasonably safe and suitable, as described in paragraph 34 included at least the monitoring of equipment emissions of any of the toxic substances, which includes reasonably upgrading equipment, either in whole or in part, so as to implement technology that reduced equipment emissions of any of the toxic substances.

37. During Plaintiff's employment, Defendant breached said duty in at least one or more of the following ways:

   a. Failure to provide adequate ventilation systems for diesel exhaust where Plaintiff regularly worked;

   b. Failure to provide Plaintiff with knowledge as to what would be reasonably safe and sufficient apparel and proper protective equipment to protect him from being poisoned and injured by exposure to the toxic substances; and,

   c. Failure to provide Plaintiff with protective equipment designed to protect him from exposure to the toxic substances.

38. The aforesaid occurrences were caused in whole or in part by the negligence of Defendant and/or the negligence of Defendant's agents, servants, and/or employees.

39. As a direct result of one or more of the foregoing negligent acts of Defendant, in addition to others not specifically mentioned but that may be discovered during litigation, Plaintiff developed cancer.

40. Plaintiff experienced and endured, and in the future will experience and endure: pain and suffering, inconvenience, irritation, annoyance; emotional distress; medical expenses associated with diagnosis and treatment; lost wages, disability, loss of normal life, increased susceptibility to injury, shortened life expectancy, and caretaking expenses, in addition to other injuries and expenses that would otherwise not have been necessary absent Defendant's negligence.

41. Plaintiff suffers from a constant fear of death because of his cancer.

42. Within three years of the filing of this Complaint, Plaintiff learned that his cancer was caused, at least in part, by the negligence of the Defendant.

43. Plaintiff requests trial by jury.

**WHEREFORE**, Plaintiff, Albert Hartman, prays that Defendant, Illinois Central Railroad Company, be duly served with a copy of this Complaint and be summoned to appear and answer same and after due proceedings are held that there be Judgment granted herein in favor of Plaintiff, and against Defendant, for all sums reasonable in the premises, together with legal interest thereon from the date of judicial demand, until paid, for all costs of these proceedings and for all general and equitable relief.

Dated: June 5, 2020

Respectfully Submitted,

**POOLSON ǀ ODEN**

__/s/ Carisa G. Oden_____
CARISA GERMAN-ODEN (La. Bar No. 31463)
DANIEL J. "DANNY" POOLSON, JR. (La Bar No. 30676)
3000 West Esplanade Avenue, Suite. 200
Metairie, LA 7002
Phone: (504) 766-2200
Fax:     (504) 766-2070
Email: carisa@poolsonoden.com
Email:  danny@poolsonoden.com


and


**MARC J. BERN & PARTNERS, LLP**

Stephen F. Monroe, IL#6305823, *pro hac vice pending*
Luke Pepper, PA#87100, *pro hace vice pending*
Marc J. Bern & Partners, LLP
225 West Washington Street, Suite 2200
Chicago, IL 60606
Phone: (312) 894-7941
Fax:     (312) 873-4537
Email: smonroe@bernllp.com