UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALBERT HARTMAN                                    CIVIL ACTION


VERSUS                                            NO: 20-1633


ILLINOIS CENTRAL
RAILROAD CO.                                      SECTION "H"


## ORDER AND REASONS

Before the Court is Defendant Illinois Central Railroad Co.'s Motion for Summary Judgment (Doc. 33). For the following reasons, the Motion is **DENIED**.


## BACKGROUND

Plaintiff Albert Hartman worked for Defendant Illinois Central Railroad Co. from 1960 to 1996. In his Complaint, he alleges that his lung and colon cancers were caused by his workplace exposure to various toxic substances, including coal dust, coal soot, coal smoke, diesel fuel, diesel exhaust, diesel fumes, diesel smoke, diesel exhaust soot, benzene, polycyclic aromatic hydrocarbons, creosote, pesticides, herbicides, silica sand, and asbestos.

Plaintiff brings a claim for negligence under the Federal Employer's Liability Act ("FELA").

In the instant Motion, Defendant seeks dismissal of Plaintiff's claim in light of a settlement and release that he executed in connection with a prior personal injury claim. In 1995, Plaintiff settled a claim with Defendant after he sustained an injury to his middle finger. In connection with the settlement, Plaintiff executed a "Final Settlement, Release, and Resignation" ("the Release"). The Release stated, in relevant part:

> Hartman does hereby fully, completely and forever release, discharge and acquit Illinois Central Railroad Company, . . . from any and all claims, losses, damages, injuries or diseases directly or indirectly caused by or resulting from any alleged exposure to fumes, diesel fumes, fuel fumes, paint vapors, methyl bromide, ammonia gas, lead, PCB, dioxins or other toxic or noxious chemical exposure and all other fumes, dusts, mists, gases and vapors from any chemical or agent.[1]

Plaintiff signed the Release, acknowledging that he fully understood it. He was also represented by counsel in the negotiation and execution of the Release, and his attorney certified that she had explained the Release to him. Defendant argues, therefore, that the Release bars Plaintiff's current claim against Defendant. In his deposition, Plaintiff testified that his lawyer did not explain the agreement to him, that he did not read it, and that he believed he was only releasing Defendant from liability for the injury to his finger. The Court will address the parties' arguments in turn.

---

[1] Doc. 33-2.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[4] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[5] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[6] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[7] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the

---

[2] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).

[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[4] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).

[5] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).

[6] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[7] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

necessary facts."[8] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[9]

## LAW AND ANALYSIS

FELA provides that the purpose of the Act is to hold a negligent railroad carrier liable for injuries suffered by its employee.[10] Section 55 of FELA explicitly maintains that any contract attempting to exempt a carrier from liability created by FELA is void. The Supreme Court, however, has held that a release of liability executed in conjunction with a settlement of disputed liability for work-related injuries is not barred by § 55.[11] The parties agree that there are two lines of case law addressing the scope of releases of claims under FELA—one line follows the Sixth Circuit's opinion in *Babbit v. Norfolk & Western Railway*, which holds that only known claims for specific injuries can be released,[12] while the other follows the Third Circuit's opinion in *Wicker v. Consolidated Rail Corp.*, which holds that the parties may release known risks of future injuries.[13] Defendant argues that the *Wicker* line of cases applies here to bar Plaintiff's claim. Plaintiff argues that he did not release his cancer claim under either line of case law because the Release lacks sufficient specificity and fails to reflect Plaintiff's informed intent. This Court agrees with Plaintiff that, even if *Wicker* applies, Plaintiff has not released his claim.

---

[8] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[9] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

[10] 45 U.S.C. § 51.

[11] Callen v. Pennsylvania R. Co., 332 U.S. 625, 631 (1948).

[12] Babbitt v. Norfolk & W. Ry. Co., 104 F.3d 89, 93 (6th Cir. 1997).

[13] Wicker v. Consol. Rail Corp., 142 F.3d 690 (3d Cir. 1998).

In *Wicker*, the Third Circuit considered the effect under FELA of four different releases of varying degrees of generality.[14] The defendant-railroad argued that the releases barred its employees' claims for injuries related to workplace exposure to toxic chemicals.[15] Each of the plaintiffs had previously settled a claim with the defendant for either asbestos-related injuries or back injuries and had signed a release in connection with their settlements.[16] One of the releases, signed by the plaintiff Edward Wicker, specifically released the defendant from liability for future injuries as a result of exposure to substances "including but not limited to dust, fumes, vapors, mists, gases, agents, asbestos or toxic substances of any kind."[17] The court held that "a release does not violate [§ 55] provided it is executed for valid consideration as part of a settlement, and the scope of the release is limited to those risks which are known to the parties at the time the release is signed."[18] However, the court went on to explain that the written release should not be conclusive of the parties' intent in light of the ease of writing detailed boilerplate agreements cataloging every known hazard to railroad employment.[19] The court noted that "where a release merely details a laundry list of diseases or hazards, the employee may attack that release as boiler plate, not reflecting his or her intent."[20] Applying this standard, the court held that the boilerplate list of generic hazards in Wicker's release did not demonstrate that he knew of the

---

[14] *Id.* at 693.
[15] *Id.*
[16] *Id.*
[17] *Id.* at 701.
[18] *Id.*
[19] *Id.*
[20] *Id.*

"actual risks to which [he] was exposed and from which the employer was being released."[21]

Here too, Plaintiff's Release contains a boilerplate list of hazards to which he may have been exposed. The Release does not discuss the "scope and duration of the known risks" or list the "specific risks" that he faced.[22] The Release therefore does not evince a clear intent by the parties to release Defendant from liability for Plaintiff's cancer.[23] Defendant has not presented any evidence that Plaintiff was aware of the risk of developing cancer from the toxins to which he was exposed at work.[24] Further, Plaintiff has testified that he did not intend to release his cancer claim and that he understood the Release to apply only to his finger injury. The cases cited by Defendant are easily distinguishable from the facts here.[25] Accordingly, the Court does not find that the parties intended the Release to bar Plaintiff's claims in this matter.[26]

---

[21] *Id.*

[22] *See id.*

[23] *See* Bruner v. Ill. Cent. R. Co., 578 N.E.2d 1385, 1387 (Ill. App. Ct. 1991) (upholding release where it specifically acknowledged the risk of hearing loss).

[24] The fact that Plaintiff was generally aware that diesel fumes can cause cancer is insufficient to show he released a known risk. *See* Loyal v. Norfolk S. Corp., 507 S.E.2d 499, 503 (Ga. Ct. App. 1998) (upholding release where "hearing loss was a risk known and foreseeable to [the plaintiff] at the time he signed the release" where plaintiff had complained about excessive noise on the job and had regular hearing tests as part of his employment).

[25] *See Bruner*, 219 Ill. App. 3d at 180 (release specifically acknowledged the risk of hearing loss); *Loyal*, 234 Ga. App. at 703 (plaintiff never claimed that he was unaware of the risk of hearing loss, had complained about excessive noise on the job, had regular hearing tests as part of his employment, release was not for specific injury); Joseph v. Huntington Ingalls Inc., 2020 WL 499939 (La. 2020) (both prior injury and claim dealt with occupational exposures); Gortney v. Norfolk & W. Ry. Co., 549 N.W.2d 612, 616 (Mich. Ct. App. 1996) (court did not address *Wicker* or § 55 of FELA).

[26] At least one court has reached a similar conclusion. *See* Russell v. Ill. Cent. R.R. Co., 2015 WL 4039982, at *20 (Tenn. Ct. App. June 30, 2015) ("We agree with the trial court that the release executed by Mr. Russell was not sufficiently specific to release the cancer

## CONCLUSION

For the foregoing reasons, the Motion is **DENIED**.


New Orleans, Louisiana this 29th day of March, 2022.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

claims at issue. The language in the second paragraph of the release is boilerplate; it contains a laundry list of chemicals and references only one disease by name: asbestosis. Under either the *Babbitt* or *Wicker* approach, both of which were referenced by the court in its ruling at the hearing, this language lacks sufficient specificity and fails to reflect an informed intent of Mr. Russell to release a future claim for cancer.").